**O**

# United States District Court
# Central District of California

| | |
|---|---|
| HOTELES DEL CABO S. DE R.L. DE C.V., | Case No. 2:15-cv-00408-ODW(JPRx) |
| Plaintiff, | **ORDER DENYING (1) PLAINTIFF'S** *EX PARTE* **APPLICATION FOR A TEMPORARY RESTRAINING** |
| v. | **ORDER [16], (2) PLAINTIFF'S** *EX PARTE* **APPLICATION FOR** |
| CAPELLA HOTEL GROUP, LLC, | **ORDER TO SHOW CAUSE RE: ISSUANCE OF A PRELIMINARY** |
| Defendant. | **INJUNCTION [16], AND (3) DEFENDANT'S** *EX PARTE* **APPLICATION FOR AN EXTENSION OF TIME [23]** |

## I.   INTRODUCTION

On January 20, 2015, Plaintiff Hoteles Del Cabo S. De R.L. De C.V. ("Hoteles") filed the instant action against Defendant Capella Hotel Group, LLC ("Capella") alleging two violations of trademark infringement under the Lanham Act, 15 U.S.C. §§ 1125, *et seq.*  (ECF No. 1.)  Three days later, Hoteles filed an *Ex Parte* Application for a Temporary Restraining Order and an *Ex Parte* Application for Order to Show Cause Re: Issuance of a Preliminary Injunction, both of which are currently pending before the Court.  (ECF No. 16.)  On January 25, 2015, Capella filed an *Ex*

*Parte* Application for Extension of Time to File Opposition.  (ECF No. 23.)  Hoteles claims that it will suffer irreparable harm to its reputation if Capella's advertising and social media practices are not immediately enjoined.  For the reasons discussed below, the Court **DENIES** (1) Hoteles' *Ex Parte* Application for a Temporary Restraining Order, (2) Hoteles' *Ex Parte* Application for Order to Show Cause Re: Issuance of Preliminary Injunction, and (3) Capella's *Ex Parte* Application for Extension of Time to File Opposition.

## II.    FACTUAL BACKGROUND

### A.    The Contract Dispute

Hoteles is a Mexican corporation and "acting owner" of a luxury resort hotel (the "Resort") in Cabo San Lucas, Mexico.  (ECF No. 18 ["Bogart Decl."] ¶ 3.) Capella is a Delaware corporation that, in conjunction with an "entity it owns"— WPHG Mexico Operating, L.L.C. ("WPHG")—operates and markets luxury hotels. (*Id.*)  In 2005, the previous owner of the Resort—another Mexican corporation— entered into an Operating Agreement (the "Agreement") with WPHG whereby WPHG would operate and market the Resort.  (*Id.* ¶¶ 3–4.)  In 2012, the original owner then assigned its rights under the Agreement to Hoteles.  (*Id.* ¶ 5.)  The Agreement, set to expire after thirty years, allegedly allows Hoteles the right to terminate the Agreement at any time "for cause."  (*Id.* ¶ 4.)  Under the Agreement, the Resort was named and marketed as the "Capella Pedregal."  (*Id.* ¶ 3.)  A significant percentage of fees paid to WPHG under the Agreement were for the use of the "Capella" mark.  (*Id.* ¶ 7.) Capella has allegedly always held itself out to the public as the operator of the Resort. (*Id.* ¶ 6.)

At some point in 2014, Hoteles allegedly discovered that WPHG breached the Agreement by overpaying itself $2.2 million in fees, creating false financial statements and accounts, and engaging in other misconduct.  (*Id.* ¶ 8.)  On August, 14, 2014, Hoteles allegedly issued WPHG a Notice of Default under the terms of the Agreement.  (*Id.* ¶ 9.)  WPHG allegedly refused to cure the Default thereby giving

Hoteles the right to terminate the Agreement under Section 3.3(a) of the Agreement. (*Id.* ¶ 10.)  On November 3, 2014, following the Resort's closure for repair in the aftermath of Hurricane Odile, Hoteles allegedly delivered WPHG a Notice of Termination of the Operating Agreement.  (*Id.* ¶ 12.)  The Notice also notified WPHG that Hoteles commenced an arbitration proceeding before the International Chamber of Commerce ("ICC")—as required under the Agreement—to recover damages from WPHG's breach of the Agreement.  (*Id.* ¶ 12.)

On the same night as Hoteles delivered the Notice of Termination, Hoteles allegedly terminated WPHG and Capella's access to the Resort's computer systems and installed a completely new management team.  (*Id.* ¶ 14.)  The termination of the Agreement and installation of new management was allegedly completed in one night. (*Id.*)  Hoteles allegedly retained all of the remaining 420 on-site employees at their same titles and compensation.  (*Id.* ¶ 15.)  The new management created a new name and logo for the Resort—"The Resort at Pedregal"—and began branding the new name on social media and its new website—www.TheResortAtPedregal.com.  (*Id.* ¶¶ 16–17.)  Hoteles immediately issued a press release announcing that the Resort "had ended its affiliation with the Capella brand" and was re-launching under a new name.  (ECF No. 20, Ex. A.)

**B.    False Representation Allegations**

Despite the termination of WPHG and Capella's role with the Resort, Capella allegedly still maintains a strong internet presence promoting the Resort.  Capella allegedly continues to operate a website and social media sites promoting "Capella Pedregal."  (*Id.*)  Hoteles claims that the termination of the Agreement requires Capella and WPHG to withdraw any statements in the public domain associating the Resort with their brands.  (*Id.* ¶ 32.)  Capella's CEO recently posted on Twitter that "we look forward to serving you and your clients at the Capella Pedregal when it reopens."  (*Id.* ¶ 35.)  Hoteles allegedly began sending Capella letters in early November demanding that Capella cease making online representations that suggested

it was associated with the Resort.  (*Id.* ¶ 30.)

Hoteles further alleges that Capella is actively trying to divert business away from Hoteles.  According to Hoteles, Capella's "Capella Pedregal" website contains a message directing visitors to Capella's "sister property" in Mexico while the Resort is undergoing hurricane repairs.  (*Id.* ¶ 36.)  On December 17, 2014, Capella allegedly sent e-mails to past Resort guests inviting them to visit Capella's other resort.  (*Id.* ¶ 37.)  After months of undergoing hurricane-related repairs, the Resort is set to re-open under the Hoteles management on January 31, 2015.

### III.   LEGAL STANDARD

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction."  *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  A court may only grant such relief "upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To prevail, the moving party must show:  (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent preliminary injunctive relief; (3) that the balance of equities tips in the moving party's favor; and (4) that preliminary injunctive relief is in the public interest (the "*Winter* factors").  *Id.* at 20.  "Under *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (original emphasis).  In the Ninth Circuit, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can [also] support issuance of an injunction, assuming the other two elements of the *Winter* test are also met."  *Id.* at 1132, 1135 (holding that the "sliding scale" test remains viable "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest").

A court may only issue an *ex parte* temporary restraining order ("TRO") if "specific facts in an affidavit or a verified complaint clearly show that immediate and

irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).

## IV.    DISCUSSION

Hoteles seeks an *ex parte* TRO that would enjoin Capella from (1) using the "Capella Pedregal" name, (2) promoting the Resort as a Capella-managed property on its website, (3) advertising the Resort through print or e-mail to past Resort visitors, and (4) utilizing the 1-800 phone number associated with the Resort.  (ECF No. 16-1.) Hoteles also wants the Court to order Capella to return control of all social media platforms to Hoteles.  (*Id.*)  Hoteles also wants a preliminary injunction granting these same requests, and requested an order to show cause to expedite the preliminary injunction briefing and argument schedule.  (*Id.*)

To expediently resolve Hoteles' request for "immediate" relief, the Court will focus only on the second *Winter* factor—a likelihood that the moving party will suffer irreparable harm absent preliminary injunctive relief.  *Winter*, 555 U.S. at 20.  Since this is a request for an *ex parte* TRO, Hoteles must also prove that the irreparable harm is "immediate."  *See* Fed. R. Civ. P. 65(b)(1)(A).

Hoteles' brief is written as though it is only requesting a preliminary injunction. There is almost no mention of immediate and irreparable harm necessitating an *ex parte* TRO.  Hoteles contends that it "must seek immediate injunctive relief both to prevent future damage to its reputation and goodwill" before the Resort's re-opening on January 31, 2015.  (ECF No. 16 ["Pl. Br."] at 22.)  Hoteles' only argument in support of this "immediate" need is as follows:

> Guests who pay top rates to stay in luxury resorts like [the
> Resort] are unwilling to endure any uncertainty about the
> level of services they will receive in return, and any
> suggestion of management turmoil that could result in a
> deterioration of service significantly undermines the
> necessary perception of quality for this type of property, and

1    would cause a significant number of prospective guests to
2    book elsewhere.

3    (*Id.* at 8.)

4    The Court is not convinced that this "uncertainty" regarding the level of service
5    or management proves immediacy or irreparability.  As an initial matter, the alleged
6    infringing conduct has continued consistently since early November 2014.  Hoteles
7    now attempts to convince the Court that despite three months of infringement, the
8    same conduct now presents *immediate* harm.  If this harm was truly immediate and
9    irreparable, Hoteles would have sought redress when the irreparable harm began
10   months ago.  The Court rejects Hoteles claim that it wanted to first build a full record
11   of infringement before it sought judicial intervention—this argument is unconvincing
12   and cuts against the alleged irreparable nature of the harm.

13   The Court recognizes that the Resort re-opens later this week; however, the re-
14   opening date does not transform months of allegedly unlawful advertising into an
15   immediate harm.  Surely the re-opening date was not a surprise for Hoteles.  Common
16   sense informs the Court that visitors headed to the Resort this weekend booked their
17   trips weeks (or months) ago, and it is highly unlikely that prospective customers are
18   booking international vacations on a five-day notice.  Hoteles does not make any
19   allegations to the contrary.  While the alleged irreparable harm is still occurring, the
20   re-opening date is insufficient to transform this past/continuing harm into an
21   *immediate* harm warranting an "extraordinary remedy."  *Winter*, 555 U.S. at 24.

22   The Lanham Act allows for injunctive relief, *see* 15 U.S.C. § 1125(c)(1), and
23   trademark infringement damaging a party's goodwill is potentially irreparable, *see*
24   *Rent-a-Center, Inc. v. Canyon Television & Appliance*, 944 F.2d 597, 603 (9th Cir.
25   1992) ("We have also recognized that intangible injuries, such as damage to . . .
26   goodwill, qualify as irreparable harm.").  However, an application for an *ex parte*
27   TRO requires proof of harm that is immediate *and* irreparable, and the Court
28   concludes that Hoteles made no such showing.  Since Hoteles' request fails at the

second *Winter* factor, the Court does not need to address the remaining factors.

## V.   CONCLUSION

For the reasons discussed above, the Court hereby **DENIES** Hoteles' *Ex Parte* Application for a Temporary Restraining Order.  (ECF No.16.)  In analyzing Hoteles' *Ex Parte* Application for an Order to Show Cause Re: Issuance of a Preliminary Injunction, the Court finds that Hoteles made no showing as to why the Court should depart from the traditional motion-practice rules.  Hoteles' inability to demonstrate a need for an immediate remedy leads the Court to conclude that Hoteles should comply with Local Rules 6-1 and 7-3.  Therefore, the Court hereby **DENIES** Hoteles' *Ex Parte* Application for an Order to Show Cause Re: Issuance of a Preliminary Injunction.  (ECF No. 16.)  The Court also **DENIES** Capella's *Ex Parte* Application for Extension of Time to File Opposition as **MOOT**.  (ECF No. 23.)

**IT IS SO ORDERED.**

January 26, 2015

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**